UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No.  19-46085

WAYNE D. MEEHEAN and                            Chapter 7
REDA L. MEEHEAN,
                                                Judge Thomas J. Tucker
                        Debtors.
_____/

**OPINION REGARDING UNITED STATES TRUSTEE'S MOTION
TO DISMISS THIS CASE UNDER 11 U.S.C. § 707(b)(3)**

## I. Introduction

This is a no-asset Chapter 7 case — that is, the Chapter 7 Trustee has determined that

there are no non-exempt assets he can administer for the benefit of creditors.  But the Debtors,

Wayne D. Meehean and Reda L. Meehean, have monthly Social Security income, that when

combined with their other income, gives them the financial ability to pay off all of their

unsecured debts in about 41 months.  And they can do that while at the same time continuing to

make the monthly mortgage payments for their home and the monthly lease payments on their

two vehicles.  But instead of seeking to repay their unsecured creditors, through a repayment plan

in Chapter 13, the Debtors seek to discharge their unsecured debts in Chapter 7, without paying

anything.

Is this attempted use of Chapter 7 by the Debtors an impermissible "abuse" of Chapter 7,

within the meaning of 11 U.S.C. §§ 707(b)(1) and 707(b)(3)?  What role, if any, does the

Debtors' Social Security income play in this inquiry?

Pending before the Court is the United States Trustee's motion to dismiss this Chapter 7

bankruptcy case, based on 11 U.S.C. § 707(b)(3).[1]  The United States Trustee (the "UST")

argues, in the words of § 707(b)(3)(B),  that the "totality of the circumstances" of  "the Debtors'

financial situation" demonstrates "abuse" of Chapter 7.  This is so, according to the UST,

because when considering all of the Debtors' income, including the monthly amount that the

Debtors receive in Social Security benefits, the Debtors have ample disposable income with

which to pay their debts.[2]

     The Debtors object to the UST's motion.[3]  The Debtors argue that Congress, through the

enactment of 42 U.S.C. § 407, and certain provisions of the Bankruptcy Code, 11 U.S.C.

§§ 101(10A)(B)[4] and 1325(b)(2), has shown an intent to protect Social Security benefits from the

reach of creditors, and that the Debtors' retention of Social Security income cannot be the basis

for a dismissal under § 707(b)(3).[5]

     This Court held a hearing on the UST's motion.  The Court has considered all of the oral

and written arguments of the parties as well as the briefs and exhibits filed by the parties.  For the

reasons explained in this Opinion, the Court agrees with the UST, and will grant the UST's

motion, as described in part V of this Opinion.

## II.  Jurisdiction

     This Court has subject matter jurisdiction over this bankruptcy case and this contested

---

[1]  Docket # 18.

[2]  *Id.*

[3]  Docket # 20.

[4]  Formerly 11 U.S.C. § 101(10A)(B).

[5]  *Id.* at 5.

matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O).

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11. *See* 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *Allard v. Coenen (In re Trans-Industries, Inc.)*, 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," including Bankruptcy Code § 707. *Id.* It is a proceeding "arising in" a case under title 11 because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *Id.*

## III. Facts

The following facts are undisputed. The Debtors filed this Chapter 7 bankruptcy case on April 22, 2019. The Debtors' original Schedule E/F listed no priority unsecured claims, and non-priority unsecured claims totaling $202,696.97.[6] But this amount erroneously included a secured claim of $143,143.00 attributable to the mortgage on the Debtors' residence.[7] The Debtors later amended Schedule E/F to remove the secured claim, and it now lists no priority unsecured claims, and a total of $43,099.97 in non-priority unsecured claims.[8]

The Debtors' Schedule I lists $4,007.00 in combined monthly income from Social

---

[6] Schedule E/F (Docket # 1) at pdf pages 27, 34.

[7] *Id.* at pdf page 31. The same mortgage debt was also listed in Schedule D, in the slightly lower amount of $142,871.05. *Id.* at pdf page 25.

[8] Amended Schedule E/F (Docket # 19) at pdf pages 3, 9.

3

Security and $1,834.98 in combined monthly income from "Pension or retirement income," for a total monthly income of $5,814.98.[9] The Debtors' monthly expenses listed on Schedule J, which include a monthly mortgage payment of $900.00 and monthly payments on two vehicle leases in the combined amount of $630.55, total $5,745.55, resulting in a reported monthly net income (surplus) of $96.43.[10] But in listing their monthly expenses in Schedule J, the Debtors included $1,300.00 per month which they described as "Social Security Income Excluded from CMI."[11] If this Social Security *income* had not been listed as an *expense* in the Debtors' Schedule J in this way, the Debtors would show a monthly net income (surplus) of $1,396.43.[12]

This surplus amount actually appears to be slightly lower than $1,396.43 per month. As explained in Part IV.E of this Opinion, two vehicle lease assumption agreements filed recently indicate that the Debtors' actual monthly net income (surplus) is $1,252.32.

On May 22, 2019, just after the Chapter 7 Trustee concluded the § 341 meeting of creditors, the Trustee filed a "no asset" report, indicating that there are no non-exempt assets in the bankruptcy estate that can be used to pay anything to creditors. From this it is clear that if this case remains in Chapter 7, creditors will be paid nothing.

As discussed in more detail in part IV.E of this Opinion, it is clear that if the Debtors

---

[9] Schedule I (Docket # 1) at pdf page 38.

[10] Schedule J (Docket # 1) at pdf pages 39-41; Schedule G (Docket # 1) at pdf page 35.

[11] Schedule J (Docket # 1) at pdf page 41, line 21.

[12] The Debtors' counsel stated during oral argument that the Debtors anticipate incurring increased expenses at some point, associated with the care of grandchildren. But no specifics were given. And as of the date of this Opinion, the Debtors have not filed amended schedules I or J or any other document indicating any additional expenses. The Debtors have filed nothing to quantify, document, or otherwise support their attorney's vague assertion about increased expenses.

4

wanted to do so, they could afford to propose, confirm, and perform a Chapter 13 plan that would pay their unsecured creditors *in full* in about 41 months.  But instead of doing this, the Debtors seek to use Chapter 7 to discharge all of their unsecured debts, keep all of their income, including all of their Social Security income, and pay their unsecured creditors *nothing*.  For the reasons stated below, the Court finds this to be an "abuse" of Chapter 7, within the meaning of §§ 707(b)(1) and 707(b)(3).

## IV.  Discussion

A court may dismiss a case filed under Chapter 7 or, with the debtor's consent, convert the case to Chapter 13, if the court finds that "the granting of relief would be an abuse of the provisions of [Chapter 7]."  11 U.S.C. § 707(b)(1).

> "Abuse of the provisions of" Chapter 7, within the meaning of § 707(b)(1), can be shown in two alternative ways. The first of these is based on an unrebutted presumption of abuse under § 707(b)(2). If the presumption of abuse does not arise under § 707(b)(2) or is rebutted, the Court must consider whether abuse is established under § 707(b)(3), by determining "whether the debtor filed the petition in bad faith" or whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3).

*In re Maura*, 491 B.R. 493, 497 (Bankr. E.D. Mich. 2013).

In this case the UST does not argue that there is a presumption of abuse under the "means test" established by § 707(b)(2).  Rather, the UST argues abuse based only on § 707(b)(3).

## A.  Section 707(b)(3)

Section 707(b)(3) states:

> (3) In considering . . . whether the granting of relief would be an abuse of the provisions of [Chapter 7] in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the

5

court shall consider–

> (A) whether the debtor filed the petition in bad faith; or

> (B) [whether] the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. §§ 707(b)(3)(A) and (B).

The UST does not allege "bad faith" under § 707(b)(3)(A). Rather, the UST argues that dismissal is required because "the totality of circumstances of the debtor's financial situation demonstrates abuse."[13] *See* 11 U.S.C. § 707(b)(3)(B).

In the Sixth Circuit, *In re Krohn*, 886 F.2d 123 (6th Cir. 1989) is the leading case for determining abuse under § 707(b)(3).[14] Under *Krohn*, a finding of abuse can be made when there is a want of "need" for Chapter 7 relief. *See id.* at 126. In this case, the UST asserts that the Debtors are not "needy" because they have $1,396.43 (actually, $1,252.32) in monthly disposable income available to pay their debts.

"Among the factors to be considered in deciding whether a debtor is needy is [his or her] ability to repay [his or her] debts out of future earnings." *Id.* (citing *In re Walton*, 866 F.2d 981 (8th Cir.1989) and *In re Kelly*, 841 F.2d 908 (9th Cir. 1988)). "That factor alone may be

---

[13] Mot. to Dismiss (Docket # 18) at 1, 7.

[14] *Krohn* was decided before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and thus applied the "substantial abuse" standard stated in the pre-BAPCPA § 707(b). Courts in the Sixth Circuit continue to apply the analysis of *Krohn* to determine whether there is "abuse" under current § 707(b)(3)(B). *See In re Weixel*, 494 B.R. 895, 901 (B.A.P. 6th Cir. 2013) ("Although BAPCPA changed the standard of substantial abuse to abuse and eliminated the presumption in favor of the debtor being granted relief, § 707(b)(3) otherwise essentially codifies the principles of pre-BAPCPA case law concerning § 707(b)"); *see also Moutousis v. United States Trustee* (*In re Moutousis*), 418 B.R. 703, 707-08 (E.D. Mich. 2009); *In re Zaporski*, 366 B.R. 758 (Bankr. E.D. Mich. 2007).

sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease." *Krohn*, 886 F.2d at 126; *see also In re Modiri,* 474 B.R. 511, 514 (Bankr. E.D. Mich. 2012) ("Clearly, it is an abuse of Chapter 7 for a debtor to seek a discharge of debts that the debtor can pay, since the purpose of bankruptcy is to grant relief to those debtors who cannot pay their debts.").

The Court in *Krohn* further stated:

> Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Krohn*, 886 F.2d at 126-27.[15] An additional factor is "whether the debtor's financial situation is the result of an unforeseen catastrophic event." *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 437 (6th Cir. 2004).

---

[15] The district court in *Moutousis* agreed that the *Krohn* factors continued to be relevant after BAPCPA. But the court rejected the United States Trustee's argument that "a bankruptcy court can dismiss a petition based on the ability to pay without considering any other circumstances." *Id.* at 708. The court found the argument:

> inconsistent both with the language of *Krohn* and that of the statute, which requires the bankruptcy court to determine whether the petition is an abuse of Chapter 7 under the 'totality of circumstances' of the debtor's financial situation. A better reading of *Krohn* is that the ability of the debtor to repay his debts out of future earnings may be the dispositive factor, but it does not permit the bankruptcy court to fail to consider the other *Krohn* factors in determining whether the petition is abusive under the totality of the circumstances.

*Moutousis*, 418 B.R. at 709.

7

**B. Consideration of Social Security income in the § 707(b)(3) "abuse" inquiry**

**1. Statutory provisions relating to Social Security income**

The UST argues that when the Debtors' Social Security income is included, the Debtors have a substantial monthly surplus with which to pay their debts. But according to the Debtors, the Court cannot consider their Social Security income at all, in determining the Debtors' ability to pay their debts, as part of the "totality of the circumstances of [the Debtors'] financial situation" under § 707(b)(3)(B).

The Debtors point out that the Bankruptcy Code expressly excludes Social Security benefits from the definition of "current monthly income." 11 U.S.C. § 101(10A)(B)(ii)(I). This exclusion has two direct statutory effects of possible relevance here. First, in Chapter 7 cases, Social Security income is not considered in calculating whether a presumption of abuse exists under the means test provisions of § 707(b)(2). Rather, the only income considered under the means test is that which is within the definition of "current monthly income." *See* 11 U.S.C. § 707(b)(2)(A)(i).

Second, in Chapter 13 cases, Social Security income is not considered in determining whether a proposed plan meets the confirmation requirement that "all of the debtor's projected disposable income to be received" during the plan's "applicable commitment period"[16] "will be applied to make payments to unsecured creditors under the plan." *See* 11 U.S.C.

---

[16] In the Sixth Circuit, for a Chapter 13 plan that does not pay unsecured creditors in full, the "applicable commitment period" determines the minimum length that the Chapter 13 plan must run — either 3 years or 5 years — depending on whether the debtor's current monthly income is below the applicable State's median family income or above it. *See* 11 U.S.C. §§ 1322(d)(1), 1322(d)(2), 1325(b)(1)(B); *Baud v. Carroll,* 634 F.3d 327, 338, 344, 356-57 (6th Cir. 2011); *see also In re Riggs*, 495 B.R. 704, 716 (Bankr.W.D.Va. 2013).

8

§ 1325(b)(1)(B).  That is because the term "disposable income" as used in § 1325(b) includes only "current monthly income."  *See* 11 U.S.C. § 1325(b)(2).

The direct effect of these provisions in a Chapter 7 case is that a debtor's Social Security income is disregarded entirely in determining whether the case is an "abuse" of Chapter 7 under the means test provisions of § 707(b)(2).  (The effect of these provisions in a Chapter 13 case is discussed in part IV.C of this Opinion.)  This is why, for example, the Debtors in this case have no problem with the means test under § 707(b)(2).  Disregarding the Debtors' Social Security income, which is roughly 69% of their total income, and counting only their other income, insures that the presumption of abuse under § 707(b)(2) does not arise.[17]

But in contrast to § 707(b)(2), there is no language in the "totality of the circumstances" provision of § 707(b)(3) expressly requiring the Court to disregard the Debtors' Social Security income.

The Debtors further cite the anti-assignment provisions of a Social Security statute, 42 U.S.C. § 407.  That section is discussed in more detail in part IV.D of this Opinion.  Among other things, that section says that Social Security benefits are not "subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."  42 U.S.C. § 407(a).  Inclusion of the phrase "or to the operation of any bankruptcy . . . law" in this section has led some courts to hold that a bankruptcy debtor's right to receive Social Security benefits is not property of the bankruptcy estate under 11 U.S.C. § 541.  *See, e.g.*, *Carpenter v. Ries* (*In re Carpenter*), 614 F.3d 930, 936 (8th Cir. 2010).  This is

---

[17]  This is reflected by the means test form filed by the Debtors in this case, Official Form 122A-1 (Docket # 4).

so even though the Bankruptcy Code's exemption provisions, 11 U.S.C. § 522, provide exemptions for Social Security benefits. *See* 11 U.S.C. §§ 522(b)(3)(A) (a debtor electing state law exemptions also has the benefit of any non-bankruptcy exemptions under federal law); 522(b)(2) and 522(d)(10)(A) (a debtor electing the federal exemptions under § 522(d) has an exemption for the "right to receive — a social security benefit"). Providing exemptions for Social Security benefits in § 522 implies that Social Security benefits can be property of the bankruptcy estate under § 541. This is because § 522 only permits the debtor to "exempt from property of the estate" the types of property listed in § 522. *See* 11 U.S.C. § 522(b)(1).

In any case, the Debtors argue that the statutory provisions just described show a Congressional intent to completely protect the Debtors' Social Security income from the effects of any bankruptcy case. And, the Debtors say, such Congressional intent requires the Court to disregard the Debtors' Social Security income in deciding whether this case is an abuse under § 707(b)(3).

But there is nothing that actually says this, in § 707(b)(3) or anywhere else in the Bankruptcy Code.

The Debtors also argue that it makes no sense to invoke § 707(b)(3) against them, because if they were forced to proceed in Chapter 13, they would be able to confirm a plan that pays nothing to their unsecured creditors. This argument is based, in part, on the fact that Social Security income is not counted as part of the Debtors' "projected disposable income" under § 1325(b)(1)(B), as noted above. The Court discusses that argument in part IV.C of this Opinion.

## 2. Case law

Courts have reached differing conclusions on the question of whether Social Security

10

income may be considered in deciding whether to dismiss a Chapter 7 case for abuse under

§ 707(b)(3).  The Sixth Circuit Court of Appeals has not ruled on the issue.

### i.  Cases favoring the UST's position

The court in the case of *In re Calhoun*, 396 B.R. 270 (Bankr. D.S.C. 2008), *aff'd. on

other grounds sub nom. Calhoun v. U.S. Trustee*, 650 F.3d 338 (4th Cir. 2011),[18] did consider the

Social Security income of the debtors in finding abuse under § 707(b)(3)(B).  The debtors in

*Calhoun* reported a monthly net income of $133.00 on Schedule J.  The debtors had included, in

their calculation of monthly expenses on Schedule J, $1,538.00 in excluded Social Security

income.  *Id.* at 272.  In considering the debtors' ability to pay their debt, the *Calhoun* court

stated:

> In the case at hand, testimony and other evidence establishes the
> Debtors' ability to make a substantial payment to their creditors.
> The Court's analysis must begin with Schedules I and J.  Debtors
> admit to $133.00 per month of disposable income.  The Debtors
> report and then subtract income from Social Security shielding it
> from creditors.  This is not proper.  In two instances Social
> Security benefits are specifically excluded from income
> calculations by the Bankruptcy Code.  Income received under the
> Social Security Act is excluded from "current monthly income" in
> computing the means test for the purpose of determining whether a
> presumption of abuse arises under § 707(b)(2).  *See*
> § 101(10A)(B).  Social Security income is also excluded from the
> calculation of disposable income for above median income chapter
> 13 debtors.  *See* §§ 1325(b)(2); 101(10A)(B) . . . Congress clearly
> knew how to exclude benefits under the Social Security Act from
> consideration but did not do so in connection with the
> § 707(b)(3)(B) totality of the circumstances test.  Because this test
> was added to the Bankruptcy Code at the same time exclusions of

---

[18]  The Fourth Circuit Court of Appeals did not consider the question of whether the consideration of Social Security income was proper in the § 707(b)(3)(B) context, because the court found that the debtors had the ability to pay their creditors even without considering their Social Security income.  *Calhoun v. U.S. Trustee*, 650 F.3d 338, 342-43 (4th Cir. 2011).

Social Security Act income were added to other sections of the
Bankruptcy Code the failure to exclude the benefits is even more
significant. Such income should not therefore be excluded from
consideration in analyzing ability to pay as a component of the
totality of the debtor's financial circumstances under § 707(b)(3).

*Calhoun*, 396 B.R. at 276 (citations omitted).

*In re Riggs*, 495 B.R. 704 (Bankr. W.D. Va. 2013), is another case where the court held

that Social Security income should be considered under the § 707(b)(3)(B) "totality of the

circumstances" test. In so holding, the court reconciled § 707(b)(2)(A) (the presumption of abuse

standard which utilizes the debtor's "current monthly income" — defined in § 101(10A) as

excluding Social Security income) with § 707(b)(3)(B) (the totality of circumstances standard):

[This Court] believes that the plain meaning of the "totality of [the
debtor's] financial situation" is that the receipt of Social Security
benefits, clearly a reliable and continuing source of income, is part
of that "totality," a term which strikes this Court as being as
inclusive as it is possible to employ. It finds nothing in § 707(b)(1)
or (b)(3) to suggest that Congress intended to exclude wholly the
fact of a debtor's receipt of Social Security income from any
consideration whatsoever in evaluating the complete picture of a
debtor's financial circumstances, as in fact it did do with respect to
qualifying charitable contributions.[19] Second, it believes that
Congress recognized that while Social Security income is part of
the entire financial picture, it is also "special" and intended for a
special purpose. Therefore, it should not be treated the same as
other regular income which a bankruptcy debtor might enjoy.
Accordingly, its receipt is excluded from the operation of general
automatic rules which otherwise would require dismissal of a
Chapter 7 petition or would require that a Chapter 13 debtor must
propose a five year plan or devote all projected disposable income
to the payment of unsecured indebtedness. Lastly, Congress
recognized that, in a particular case, a debtor's receipt of Social
Security income, taking into account all other relevant
circumstances presented in that case, might well support a

---

[19] The Court notes that this reference in the *Riggs* case to charitable contributions is to the
language in 11 U.S.C. § 707(b)(1), which is quoted in footnote 21 of this Opinion.

12

conclusion that the case represented an abusive filing under the general provisions of Chapter 7, or that the use of some of a debtor's Social Security income towards the funding of a Chapter 13 plan might be necessary for the court to be persuaded of the debtor's good faith or to satisfy other applicable requirements for plan confirmation, such as, for example, the Chapter 7 "liquidation test" contained in § 1325(a)(4). To be sure, making such decisions is not as easy as applying fixed and very objective rules or criteria in deciding whether a specific Chapter 7 case should be permitted to go forward or a particular Chapter 13 plan should be confirmed, but that is ultimately the critical role of a judge—to make fine distinctions and determinations in those close cases which arguably could go either way. Congress seems to have recognized that it just was not possible to anticipate every situation which might arise, or to devise detailed rules which could fairly and appropriately decide every case, or perhaps even to provide an entirely satisfactory all encompassing definition of what constitutes "abuse" of Chapter 7 by consumer debtors. Assuming that Congress wished to provide for cases demonstrating "abuse" by consumer debtors but not coming within the parameters of the "automatic" rules, it probably had no viable alternative to giving bankruptcy judges the discretion to weigh all of the circumstances in those atypical cases in the hope that most of the time they would be appropriate gate keepers to access to bankruptcy relief. This balancing of all factors presented in particular cases, including both the receipt of and the special nature and intended purpose of Social Security income, seems to this judge to provide the best coherent and "holistic" understanding of these statutory provision

*Riggs*, 495 B.R. at 716-17 (footnote omitted) (footnote added).

*In re Booker*, 399 B.R. 662, 667 (Bankr. W.D. Mo. 2009), also held that Social Security

income could be considered in determining whether the totality of the circumstances

demonstrates abuse under § 707(b)(3). The *Booker* court rejected the debtors' argument that the

exclusion of Social Security income from the definition of current monthly income in 11 U.S.C.

§ 101(10A)(B) indicated Congressional intent that Social Security income was not required to be

13

committed to the payment of unsecured creditors.[20]  *Id.*

### ii.  Cases favoring the Debtors' position

Other courts have held that Social Security income cannot be considered part of the

"totality of circumstances" under § 707(b)(3)(B).  *In re Moriarty*, 530 B.R. 637 (Bankr. W.D.

Va. 2015), for example, rejected the distinction made by the *Riggs* case, between the statutory

exclusion of Social Security income under § 707(b)(2)(A) (the means test) and the absence of

such exclusion language in § 707(b)(3)(B).  *Id.* at 645.

> The Court . . . cannot read the statute in isolation from the context
> of the entire statutory scheme.  Congress specifically excluded
> Social Security benefits from consideration in the Means Test,
> meaning such income could not give rise to a presumption of
> abuse, no matter the amount received.  It would make no sense for
> Congress to specifically exempt Social Security income from the
> Court's consideration in determining abuse under the Means Test,
> but then for the Court [to] find abuse based on the debtor's receipt
> of such income anyway.  Thus, reading the statutory scheme as a
> whole, the most natural understanding of the provision would
> exclude Social Security income from consideration.

*Id.* at 646 (footnote omitted); *see also In re Suttice*, 487 B.R. 245, 254 (Bankr. C.D. Cal.2013)

("[T]his Court is persuaded that Congress intended social security benefits to be protected from

inclusion in a § 707(b)(3)(B) analysis . . . as shown by the Debtors' social security income being

---

[20]  In a later case, the judge issuing the Booker decision changed his position, and ruled that Social Security income "should not be considered in assessing the totality of a debtor's financial circumstances when ruling on a motion to dismiss under § 707(b)(3)(B)."  *See In re Johnson*, No. 13-20542, 2014 WL 814740, at *4 (Bankr. W.D. Mo. Feb. 28, 2014).

The change in position was based upon an intervening decision by the Eighth Circuit Court of Appeals, *Carpenter v. Ries* (*In re Carpenter*), 614 F.3d 930 (8th Cir. 2010).  The Eighth Circuit, in *Carpenter*, held that the "anti-assignment" provision of the Social Security Act, 42 U.S.C. § 407, "operates as a complete bar to the forced inclusion of past and future social security proceeds in the bankruptcy estate."  *Id.* at 936.  The 42 U.S.C. § 407 issue was not raised in the *Booker* case.

This Court addresses the § 407 issue in part IV.C of this Opinion.

14

definitively excluded from the means test of § 707(b)(2)."). Both *Moriarty* and *Suttice* cited § 407 of the Social Security Act as further support for the conclusion that Social Security benefits are excluded from the totality of circumstances test. *See Moriarty,* 530 B.R. at 649; *Suttice*, 487 B.R. at 254. This Court addresses § 407 in part IV.C of this Opinion.

### iii. This Court's view

This Court is persuaded by *Calhoun* and *Riggs* that those cases take the better view — that Social Security income should be included in the § 707(b)(3)(B) totality of circumstances analysis. The Court finds it telling that the exclusion of Social Security income from consideration for purposes of the § 707(b)(2) means test is made by clear and explicit language in the Bankruptcy Code, while there is no such language in the Code that excludes such income for purposes of the § 707(b)(3) "totality of the circumstances" test. If Congress intended to exclude Social Security income from consideration under § 707(b)(3), Congress could have done so expressly in Bankruptcy Code. The fact that Congress did not do so indicates that Congress did not intend such an exclusion.

And it is clear that §§ 707(b)(2) and 707(b)(3) are separate and independent grounds for finding abuse under § 707(b)(1). Courts "have uniformly held that the debtor's ability to pay may still be considered under Section 707(b)(3)'s totality of circumstances test notwithstanding the debtor's avoidance of the Section 707(b)(2) presumption [of abuse]." *In re Mains*, 451 B.R. 428, 435 (Bankr. W.D. Mich. 2011). As stated in *In re Mestemaker*, 359 B.R. 849, 854-55 (Bankr. N.D. Ohio 2007):

> Specifically, in determining whether granting relief would be an
> abuse of the provisions of Chapter 7 in a case in which the
> presumption "does not arise or is rebutted," a court is required to

15

consider whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(B). The plain meaning of the phrase "debtor's financial situation" must include a debtor's actual income and expenses, since such information is the starting point for any analysis of an individual's financial situation. There is no provision in § 707(b) stating that the means test is the only method through which a court may determine whether there is abuse based on a debtor's ability to pay. Rather, the plain language of § 707(b)(3), read in conjunction with § 707(b)(1) and (2), is clear and compels a conclusion that a court must consider a debtor's actual debt-paying ability in ruling on a motion to dismiss based on abuse where the presumption does not arise or is rebutted.

*Id.; see also In re Zaporski*, 366 B.R. 758, 770 (Bankr. E.D. Mich. 2007) ("Section 707(b)(2)(A) creates a statutory presumption of abuse in certain circumstances but offers no safe harbor to those debtors with respect to whom this statutory presumption does not arise. Section 707(b)(3) permits a court to dismiss for abuse even absent the statutory presumption. . . .").

Thus, contrary to the conclusions reached by the courts in *Moriarty* and *Suttice*, the exclusion of the Debtors' Social Security income from the calculation of the means test under § 707(b)(2) does not imply that such income is also excluded under the totality of the circumstances test of § 707(b)(3). Rather, it implies just the opposite. "Congress clearly knew how to exclude benefits under the Social Security Act from consideration but did not do so in connection with the § 707(b)(3)(B) totality of the circumstances test." *Calhoun*, 396 B.R. at 276.

The Court also finds it telling that in providing for dismissal of a Chapter 7 case for abuse in § 707(b)(1), Congress expressly precluded the courts from considering the debtor's making certain charitable contributions. *See* 11 U.S.C. § 707(b)(1).[21] This further tends to show that if

---

[21] Section 707(b)(1) states, in pertinent part:

In making a determination whether to dismiss a case under this section,

16

Congress intended to exclude Social Security income from consideration for § 707(b)(3) purposes, Congress would have done so expressly in the Bankruptcy Code. But it did not, in § 707(b)(3) or in any other provision of the Code, and this indicates that Congress did not intend such an exclusion.

## C. Social Security income and a Chapter 13 plan

A primary way courts consider a debtor's ability to pay, for the purposes of determining whether there is abuse under 11 U.S.C. 707(b)(3)(B), is to assess whether the debtor has sufficient disposable income to fund a Chapter 13 plan. *See Behlke*, 358 F.3d at 435; *see also In re Jones*, 556 B.R. 327, 334 (Bankr. E.D. Mich. 2016).

In this case, the Debtors argue that it would be pointless for this Court to find abuse under § 707(b)(3), and thereby force the Debtors to convert to Chapter 13 or face dismissal. This is so, the Debtors say, because in Chapter 13 they could confirm a plan that paid nothing to the unsecured creditors. The Debtors argue that such a plan would meet all the requirements for confirmation, including those in §§ 1325(b)(1)(B) and 1325(a)(3). Section 1325(b)(1)(B) requires that if the Chapter 13 plan does not provide for full payment of unsecured claims, "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). Section 1325(a)(3) requires that "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).

---

the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

17

The Debtors correctly note that their Social Security income cannot be considered in calculating their "projected disposable income" for purposes of § 1325(b)(1)(B). *See* discussion in part IV.B.1 of this Opinion; 11 U.S.C. §§ 1325(b)(1)(B), 1325(b)(2); *Baud v. Carroll,* 634 F.3d 327, 345 (6th Cir. 2011). So the Debtors could meet the requirement of § 1325(b)(1)(B) without paying their unsecured creditors anything.

The Debtors also argue that, as a matter of law, the Court could not find a lack of good faith solely because the Debtors proposed a plan that does not include the income they receive from Social Security. Therefore, according to the Debtors, they could propose and confirm a Chapter 13 plan that pays nothing to their unsecured creditors.

The Court disagrees, because the Debtors are incorrect about the § 1325(a)(3) good faith requirement.

The Debtors' argument raises an issue that is not yet settled in this Circuit — namely, whether a court may find that a Chapter 13 plan is not "proposed in good faith" under 11 U.S.C. § 1325(a)(3), because the plan does not propose to pay available Social Security income. In *Baud*, the Sixth Circuit recognized that courts around the country were split on a similar issue — *i.e.*, whether an above-median-income debtor's failure to commit available Social Security income to pay unsecured creditors could be considered in the good faith analysis under 11 U.S.C. § 1325(a)(3). *Baud*, 634 F.3d at 346 n.13. The Sixth Circuit did not decide that issue in *Baud*, because the debtors in that case had proposed to commit their Social Security income to pay unsecured creditors. *Id.*

More generally, Sixth Circuit cases have held that in assessing a Chapter 13 debtor's "good faith," the courts must consider the totality of the circumstances, *including* the debtor's

18

ability to pay creditors. *See Soc'y Nat'l Bank v. Barrett* (*In re Barrett*), 964 F.2d 588, 591-92 (6th Cir. 1992). In conducting a good faith analysis, "[t]he bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt **consistent with the debtor's available resources.**" *Metro Employees Credit Union v. Okoreeh-Baah* (*In re Okoreeh-Baah*), 836 F.2d 1030, 1033 (6th Cir. 1988) (emphasis added). The Court must consider the following factors, several of which directly concern the debtor's ability to pay:

> **(a) the amount of income of the debtor and the debtor's spouse from all sources;**
>
> (b) the regular and recurring living expenses for the debtor and his dependants;
>
> (c) the amount of the attorney's fees to be awarded in the case and paid by the debtor;
>
> (d) the probable or expected duration of the Chapter 13 plan;
>
> (e) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;
>
> **(f) the ability of the debtor to earn and the likelihood of future increase or diminution of earnings;**
>
> (g) special situations such as inordinate medical expense, or unusual care required for any member of the debtor's family;
>
> (h) the frequency with which the debtor has sought relief under any section or title of the Bankruptcy Reform Act or its predecessor's statutes;
>
> (i) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;
>
> **(j) whether the amount or percentage of payment offered by the**

19

> particular debtor would operate or be a mockery of honest, hard-working, well-intended debtors who pay a higher percentage of their claims consistent with the purpose and spirit of Chapter 13;
>
> (k) the burden which the administration of the plan would place on the trustee; and
>
> (l) the salutary rehabilitative provisions of the Bankruptcy Reform Act of 1978 which are to be construed liberally in favor of the debtor.

*Okoreeh-Baah*, 836 F.2d at 1032 n.3 (emphasis added); *see also Hardin v. Caldwell* (*In re Caldwell*), 851 F.2d 852, 859 (6th Cir. 1988); *Hardin v. Caldwell* (*In re Caldwell*), 895 F.2d 1123, 1126-27 (6th Cir. 1990); *Alt v. United States* (*In re Alt*), 305 F.3d 413, 419 (6th Cir. 2002); *Copper v. Copper* (*In re Copper*), 426 F.3d 810, 815 (6th Cir. 2005).

**1. Cases that favor the Debtors' narrower view of "good faith" under § 1325(a)(3)**

Some courts have held that Social Security income cannot be considered in the Chapter 13 good faith analysis.  *See, e.g., Anderson v. Cranmer* (*In re Cranmer*), 697 F.3d 1314, 1319 (10th Cir. 2012); *Drummond v. Welsh* (*In re Welsh*), 711 F.3d 1120, 1132 (9th Cir. 2013); *Vadenbosch v. Waage* (*In re Vandenbosch*), 459 B.R. 140, 144 (M.D. Fla. 2011); *In re Manzo*, 577 B.R. 759, 768 (N.D. Ill. 2017); *In re Ogden*, 570 B.R. 432, 438 (Bankr. N.D. Ga. 2017), *amended on other grounds,* No. 16-12280, 2017 WL 2124413 (Bankr. N.D. Ga. May 15, 2017); *see also Beaulien v. Ragos* (*In re Ragos*), 700 F.3d 220, 226-27 (5th Cir. 2012).  These courts are persuaded by the fact that Congress specifically excluded Social Security income from the calculation of "projected disposable income" that must be paid to unsecured creditors in a Chapter 13 case under § 1325(b)(1)(B).  *See, e.g., Welsh*, 711 F.3d at 1131 ("We cannot conclude, however, that a plan prepared completely in accordance with the very detailed calculations that Congress set forth is not

proposed in good faith. To hold otherwise would be to allow the bankruptcy court to substitute its

judgment of how much and what kind of income should be dedicated to the payment of unsecured

creditors for the judgment of Congress."); *Ragos*, 700 F.3d at 227 ("Having already concluded that

Debtors' plan fully complied with the Bankruptcy Code, it is apparent that Debtors are not in bad

faith merely for doing what the Code permits them to do. We thus hold that retention of exempt

social security benefits alone is legally insufficient to support a finding of bad faith under the

Bankruptcy Code.").

　　In the case of *In re Mihal*, No. 13-54435, 2015 WL 2265790 (Bankr. E.D. Mich. May 6,

2015) another judge of this Court followed the *Welsh* and *Cranmer* line of cases discussed above,

and concluded that the Chapter 13 debtors' failure to include any of their Social Security income in

their plan did not constitute a lack of good faith under § 1325(a)(3).[22]  In reaching this conclusion,

the Court reasoned:

> The good faith requirement in § 1325 has been a part of the
> Bankruptcy Code since its enactment in 1978, and "good faith" is
> undefined in the Bankruptcy Code. *In re Welsh*, 711 F.3d at 1127. In
> the Sixth Circuit, "good faith" has been defined as a subjective
> analysis of the totality of the circumstances including, but not limited
> to, a twelve factor test stated *In re Okoreeh–Baah*, 836 F.2d 1030,
> 1032 (6th Cir.1988) and in other cases.  As such, the good faith
> requirement is an amorphous, flexible, and nearly boundless
> requirement, meant to be tailored and responsive to a myriad of
> circumstances, even such not specifically provided for in the
> Bankruptcy Code.  A debtor's refusal to include his or her Social
> Security income as part of their "disposable income" however,
> cannot be categorized or described as general.  On the contrary, it is
> unmistakably statutorily specific that a debtor is required to commit
> all of his or her "disposable income" to the Chapter 13 plan, and that
> "disposable income" is defined to specifically exclude Social

---

[22]  The trustee in *In re Mihal* did not assert that there was any other basis for finding a lack of
good faith.  *Mihal*, 2015 WL 2265790, at *2.

Security income. Section 1325(a), which contains the good faith requirement, begins with the phrase "except as provided in subsection (b)", thereby explicitly referring and giving precedence to subsection (b), which, as noted, clearly states that Social Security income is not part of a debtor's disposable income. In that sense, "[w]hen Congress speaks directly to one of the good faith factors, the judicial good faith inquiry is narrowed accordingly." *In re Welsh*, 711 F.3d at 1131. To adopt the Trustee's position would be to render this specific statutory exclusion meaningless, and to invalidate the benefits of this exclusion under the guise of the "good faith" requirement.

.

*In re Mihal*, 2015 WL 2265790, at *2.

## 2. Cases that take a broader view of § 1325(a)(3) "good faith"

Other courts have held that Social Security income may be considered as part of the Chapter 13 good faith analysis. In the case of *In re Upton*, 363 B.R. 528 (Bankr. S.D. Ohio 2007), the debtors proposed a Chapter 13 plan that committed only a portion of their monthly Social Security income to pay unsecured creditors. The court noted that some courts have "opined that the express exclusion of social security income [from the calculation of 'projected disposable income' under § 1325(b)(1)(B)] eliminates the elements of debtor's income and surplus from the good faith analysis." *Id.* at 536. But the *Upton* court rejected that view:

As have many other courts, the Sixth Circuit Court of Appeals has specified the debtor's income and surplus as factors for consideration in the determination of good faith. Congress, armed with the knowledge of that interpretation, did not amend the requirement of good faith contained in § 1325 or the elements to be considered in that analysis. Congress is presumed to know the case law interpreting a statute, and if no amendment to the statute is crafted, then Congress is presumed to be satisfied with the effect of the statute as applied by the courts. Furthermore, Congress . . . indicated a clear intent to curb opportunistic filings and its displeasure with the practice of allowing debtors, who are able to repay their debts, to avoid their obligations to creditors.

22

*In re Upton*, 363 B.R. at 536 (footnote omitted) (citations and quotations omitted). In examining the facts in the case before it, the *Upton* court noted:

> According to Schedule J, the Debtors in this case have net monthly income in the amount of $2,689.98, and their monthly chapter 13 plan payment is only $2,150. As a result, the Debtors have approximately $539 of monthly net income that is not being committed to the plan, which will allow the Debtors to accumulate approximately $32,340 in savings, or surplus, over the life of the plan. This fact weighs heavily against a finding that the Debtors' plan is proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3). . . . [N]either the projected disposable income test, nor § 1325(a)(3)'s good faith requirement, either independently or in combination, permit debtors to accumulate savings while paying unsecured creditors less than 100%. Unless the Debtors can show justification for reserving such an amount, the Court would find it difficult to approve the Debtors' plan as proposed.

*In re Upton*, 363 B.R. at 536-37 (citation omitted); *see also In re Bartelini*, 434 B.R. 285, 297 (Bankr. N.D.N.Y. 2010) (citing 11 U.S.C. § 1325(a)(3) ("[T]his Court also recognizes, as did [the court in *Upton*], that a debtor's failure to commit [Social Security Income] for purposes of repaying the maximum amount to creditors may be considered as one of many factors under a totality of the circumstances inquiry to determine good faith.").

Similarly, the court in *In re Thomas*, 443 B.R. 213, 217 (Bankr. N.D. Ga. 2010), rejected the notion that compliance with § 1325(b) is sufficient to satisfy the good faith requirement of 11 U.S.C. § 1325(a)(3). Although the court in *Thomas* stated "it should be the rare debtor whose proposed plan is technically in compliance with § 1325(b) but cannot meet the burden of good faith," the court went on to conclude, that, in the case before it:

> Debtor's plan, however, does not pass the requirement of good faith under § 1325(a)(3). As Trustee noted, if Debtor contributed all his Schedule J net monthly income to his plan, all unsecured creditors could be paid in full within twenty-one months. Debtor's plan

23

instead creates a surplus of more than two times his plan every month without ***any*** payment to unsecured creditors. Considering the totality of the circumstances, Debtor's plan is not proposed in good faith; a balance must be struck.

*Id.* at 219 (emphasis in original).[23]

Finally, in the case of *In re Mains*, 451 B.R. 428 (Bankr. W.D. Mich. 2011), *aff'd sub nom. Mains v. Foley*, Nos. 1:11-CV-456, 1:11-CV-740, 2012 WL 612006 (W.D. Mich. 2012), the debtors had $6,321.19 in after tax monthly income, $2,905.00 of which was from Social Security benefits. The debtors' Schedules I and J showed a monthly net income of $1,339.30. *Id.* at 429. But the debtors proposed in their Chapter 13 plan to pay only $324.00 per month. They argued that the plan was proposed in good faith because their Social Security benefits should not be considered. *Id.* at 429-30.

The bankruptcy court in *Mains* noted that, although the Sixth Circuit has not yet decided whether Social Security benefits should be included in the § 1325(a)(3) good faith analysis, Sixth Circuit decisions "clearly establish that ability to pay remains an important factor in assessing a debtor's good faith under Section 1325(a)(3)." *Id.* at 434 (citing *In re Okoreeh-Baah*, 836 F.2d at 1037). The court reasoned:

> Therefore, this court sees no reason why the Sixth Circuit would not take into consideration all of a debtor's income, including social security benefits, in considering the sincerity of his repayment plan regardless of whether those benefits were included or not under Section 1325(b). After all, "Best efforts under 11 U.S.C. § 1325(b), without more, are not enough."

---

[23] Another bankruptcy judge in the Northern District of Georgia disagreed with the *Thomas* court's conclusion. *See In re Ogden*, 570 B.R. 432, 438 (Bankr. N.D. Ga. 2017), *amended on other grounds,* No. 16-12280, 2017 WL 2124413 (Bankr. N.D. Ga. May 15, 2017), cited previously in this Opinion.

24

*In re Mains*, 451 B.R. at 434 (quoting *Hardin v. Caldwell* (*In re Caldwell*), 895 F.2d 1123, 1126 (6th Cir. 1990)).

The *Mains* court went on to note that courts that have adopted a "safe harbor" approach to § 1325(b) ignore how courts have "addressed similar issues in connection with the interplay between Sections 707(b)(2) and (b)(3)." *Id.*

> The similarities between these two subsections and Sections 1325(a)(3) and 1325(b) are unmistakable. Each section includes an intentionally vague term—in Section 707(b) it is "abuse" and in Section 1325(a) it is "good faith" — and then complements it with an objective test. Indeed, Congress incorporated into Section 1325(b) the very same means test it added to Section 707(b) in the 2005 amendments. And Section 707(b)(3) also uses the same phrase — totality of the circumstances — that the Sixth, Seventh, Ninth, and Tenth Circuits have all used in describing how good faith is to be determined under Section 1325(a)(3).
>
> Given these similarities, one would expect that courts also would be split over whether Section 707(b)(2)'s objective assessment of the debtor's available income precludes further consideration of the same under Section 707(b)(3). However, while some academics have advocated a safe harbor approach, no court has reached this conclusion. Courts instead have uniformly held that the debtor's ability to pay may still be considered under Section 707(b)(3)'s totality of the circumstances test notwithstanding the debtor's avoidance of the Section 707(b)(2) presumption. . . .
> . . . .
>
> If, though, courts are satisfied that a debtor's ability to pay is relevant for purposes of Section 707[(b)](3), then without question a debtor's ability to pay must also be included in assessing the debtor's good faith under Section 1325(a)(3). Otherwise, the whole purpose of Sections 707(b)(2) and (b)(3) would be defeated. Debtors' situation is a case in point. Remember, Debtors are not willing participants in this Chapter 13 proceeding. They would have preferred not paying their creditors at all by keeping their case in Chapter 7. Indeed, the only reason they are proposing to pay even something in a Chapter 13 plan is because the totality of their circumstances, which included consideration of the substantial amount of pension income Debtors

25

receive in addition to their social security benefits, evidenced an abuse of the Chapter 7 process.

Debtors should not, then, be able to turn around and now abuse the Chapter 13 process. There is no question that social security benefits are to be excluded from the objective Section 1325(b) analysis, just as these benefits are to be excluded from the Section 707(b)(2) analysis. However, these benefits, when considered with the rest of Debtors' circumstances, are just as relevant to assessing whether Debtors are proposing "a sincerely intended repayment of pre-petition debt" under Section 1325(a)(3) as they were to assessing whether Debtors' financial situation evidenced abuse under Section 707(b)(3).

*In re Mains*, 451 B.R. at 434-36 (footnotes omitted).

**3. This Court's view of § 1325(a)(3)**

This Court respectfully declines to follow *Mihal* and the other cases that take a narrower view of the good faith requirement in § 1325(a)(3). Rather, this Court finds more persuasive the reasoning in the *Upton*, *Bartelini*, *Thomas*, and *Mains* cases discussed above.

Under this Court's view of the "good faith" confirmation requirement of § 1325(a)(3), it is very doubtful that the Debtors in this case could confirm a plan that paid the unsecured creditors nothing. It is much more likely that the Debtors could confirm only a plan that paid their unsecured creditors in full.

Contrary to the Debtors' argument, therefore, it is *not* pointless to find that the Debtors' attempted use of Chapter 7, rather than pursuing relief under Chapter 13, is an abuse.

**D. 42 U.S.C. § 407 and the consideration of Social Security income**

The Debtors argue that regardless of whether the Bankruptcy Code permits the consideration of Social Security income for the purposes of § 707(b)(3)(B) or § 1325(a)(3), the Social Security Act prevents consideration of such income. The Debtors cite the "anti-assignment"

26

provision in 42 U.S.C. § 407(a).  That section states, in pertinent part:

> The right of any person to any future payment under this subchapter
> shall not be transferable or assignable, at law or in equity, and none
> of the moneys paid or payable or rights existing under this
> subchapter shall be subject to execution, levy, attachment,
> garnishment, or other legal process, or to the operation of any
> bankruptcy or insolvency law.

42 U.S.C. § 407(a).  Additionally, § 407(b) states:

> No other provision of law, enacted before, on, or after April 20,
> 1983, may be construed to limit, supersede, or otherwise modify the
> provisions of this section except to the extent that it does so by
> express reference to this section.

42 U.S.C. § 407(b).

Section 407 "imposes a broad bar against the use of any legal process to reach all social security benefits." *Hildebrand v. Soc. Sec. Admin. (In re Buren*), 725 F.2d 1080, 1084 (6th Cir. 1984) (quoting *Philpott v. Essex Cty. Welfare Bd.*, 409 U.S. 413, 416 (1973)).  The Sixth Circuit in *Buren* held that § 407 prevents bankruptcy courts from compelling the Social Security Administration to pay a debtor's Social Security benefits directly to a Chapter 13 trustee.  *Buren,* 725 F.2d at 1087.

The Sixth Circuit has not ruled on whether § 407 prevents the consideration of Social Security income in the Chapter 7 abuse analysis under § 707(b)(3), or in the § 1325(a)(3) good faith analysis in a Chapter 13 case.  Courts have reached differing results on the issue, with respect to the Chapter 13 good faith analysis.

Some courts have held that the consideration of Social Security income in the Chapter 13 good faith analysis would violate 42 U.S.C. § 407.  In *Mihal*, for example, the Court stated:

> Absent any provision in the Bankruptcy Code on the subject of
> inclusion of Social Security income, that provision [§ 407(a)] alone

27

can be seen as dictating the result the Debtors seek here. To mandate that a debtor commit (or that there be taken into account for purposes of the good faith determination) future Social Security payments would be to necessarily subject such payments *"to the operation of any bankruptcy . . . law"* by any definition of the term "operation." No one argues that a Chapter 13 debtor cannot *voluntarily* use Social Security income to pay creditors through a confirmed plan or even outside bankruptcy. That differs from where a bankruptcy court *mandates* that such income be so utilized, lest confirmation be denied in the first place.

*In re Mihal*, 2015 WL 2265790, at *3 (italics in original).

Again, this Court respectfully disagrees with *Mihal*. Rather, this Court finds persuasive the § 407 analysis employed by the district court in the case of *Mains v. Foley*, Nos. 1:11-CV-456, 1:11-CV 740, 2012 WL 612006 (W.D. Mich. Feb. 24, 2012). In that case, the district court affirmed the decision of the bankruptcy court, described in Part IV.C.2 above. This Court agrees with the district court's reasoning about § 407:

> [D]ebtors argue that considering Social Security benefits in the good faith analysis effectively subjects them "to the operation of any bankruptcy or insolvency law," contrary to the Act. This Court disagrees. The entire focus of section 407 is on a third party's compelled acquisition through legal process of someone else's Social Security benefits. That is not what the good faith test of the Bankruptcy Code section 1325(a) is doing. The good faith test simply requires a debtor to demonstrate good faith in its Chapter 13 plan proposal if the Debtor wishes to receive the benefits of Chapter 13. It is a transactional test no different in principle than a Social Security beneficiary's decision to use his or her benefits to purchase anything of value that the beneficiary desires. No one would suggest that such a beneficiary has immunity from paying the restaurant bill he or she incurred just because the cash to pay came from Social Security benefits. By the same token, nothing in section 407 of the Social Security Act gives a debtor immunity from demonstrating good faith as a pre-condition to confirmation of a Chapter 13 plan, even if in a particular case — like this one — demonstrating good faith requires including some or all of the Social Security benefits in the plan.
> . . . .

28

There is nothing in the two Sixth Circuit precedents cited by Debtors that compels a contrary result. As already noted, *Baud* explicitly left the question open for later decision. *In re Buren*, 725 F.2d 1080 (6th Cir.1984), decided a question not presented here. In *Buren*, the Sixth Circuit simply held that section 407 of the Social Security Act prevents a bankruptcy court from imposing income deduction orders on the Social Security Administration. *Id.* at 1087. Nothing in *Buren* reaches the issue presented here of whether section 407 prohibits a bankruptcy judge from considering Social Security benefits as one of many factors in a subjective good faith assessment.

*Mains v. Foley*, 2012 WL 612006, at *5-6.

The Court also finds persuasive the dissenting opinion in *Drummond v. Welsh* (*In re Welsh*), 465 B.R. 843 (B.A.P. 9th Cir. 2012), *aff'd*, 711 F.3d 1120 (9th Cir 2013), which stated:

> [t]hat 42 U.S.C. § 407(a) may place Social Security benefits out of the reach of, for example, a hungry chapter 7 bankruptcy trustee trying to assemble funds to distribute to creditors is no justification to disregard the existence of such income in judging a debtor's good faith in proposing a particular plan under Chapter 13. In a Chapter 13 case, a debtor's Social Security benefits are not being garnished, seized, or "subjected to" the reach of creditors. Plainly, consideration of Social Security income does not violate either the letter or spirit of 42 U.S.C. § 407(a) . . . .

*Welsh*, 465 B.R. at 859-60 (Pappas, J., dissenting).[24]

---

[24] The bankruptcy court in *Welsh* found that the Chapter 13 trustee's "good faith objection on the basis of [Social Security income] cannot be sustained without running afoul of 42 U.S.C. § 407(a)," because "Section 1325(a)(3) does not include the express reference to § 407 which § 407(b) requires in order to limit or otherwise modify § 407(a)'s prohibition against 'the operation of any bankruptcy . . . law' against [Social Security income]." *In re Welsh*, 440 B.R. 836, 850 (Bankr. D. Mont. 2010).

On appeal, the Bankruptcy Appellate Panel for the Ninth Circuit affirmed, and its majority quoted 42 U.S.C. § 407, but did not analyze why consideration of Social Security income in the good faith analysis under § 1325(a)(3) would violate 42 U.S.C. § 407. *See In re Welsh*, 465 B.R. 843, 855-56 (B.A.P. 9th Cir. 2012). The Ninth Circuit affirmed the bankruptcy court and the BAP decisions, but noted that "[b]ecause we conclude that Congress's adoption of the means test precludes us from considering, as part of our good faith inquiry, a debtor's retention of Social Security income, we have no occasion to decide whether such consideration would violate § 407's prohibition." *In re Welsh*, 711 F.3d 1120, 1132 n.56 (9th Cir. 2013).

This Court agrees that the consideration of Social Security income in the good faith analysis of 11 U.S.C. § 1325(a)(3) is not contrary to § 407 of the Social Security Act. Given the similarities between the "subjective tests" of § 1325(a) ("good faith") and § 707(b)(3)(B) ("totality of circumstances . . . of the debtor's financial situation"), *see In re Mains*, 451 B.R. at 434, it follows that 42 U.S.C. § 407 does not bar the Court from considering the Debtors' Social Security income in the abuse inquiry under § 707(b)(3)(B).

### E. The totality of circumstances of the Debtors' financial situation in this case

This Court now considers "the totality of the circumstances" of the Debtors' "financial situation." 11 U.S.C. § 707(b)(3)(B). As discussed previously, the ability of a debtor to repay his or her debts out of future earnings is relevant to the determination of whether there is abuse under § 707(b)(3), based upon lack of need. *Krohn*, 886 F.2d at 126. Courts have found an ability to pay under § 707(b)(3) when a debtor has sufficient disposable income to fund a Chapter 13 plan. *Behlke*, 358 F.3d at 435; *Jones*, 556 B.R. at 334. As discussed in Part IV.D above, this Court agrees with the UST that the Debtors' monthly Social Security income is properly considered under § 707(b)(3).

When the Debtors' total monthly income, including their Social Security income, is considered, the Debtors have disposable income of $1,252.32 per month. As described in Part III of this Opinion, the Debtors' Schedules I and J show a monthly surplus of total income over total expenses (*i.e.*, disposable income) of $1,396.43 per month. This amount is what Schedules I and J show the Debtors have left each month, *after* paying their living expenses, including their home mortgage payment of $900.00 per month and monthly payments totaling $630.55 on their two

30

vehicle leases.[25]

The Debtors lease two vehicles, a 2019 Ford F150 pickup truck and 2018 Ford Escape.[26] Lease assumption agreements filed recently show that the monthly payments on these leases are $239.18 for the Ford Escape and $535.48 for the Ford F150, for a total of $774.66 per month, and that the Debtors have remained current in their payments on both leases.[27] Using these monthly lease payment amounts, which are higher than the amounts listed by the Debtors in their Schedule J, reduces the Debtors' monthly disposable income from $1,396.43 to $1,252.32.

Based on this, it is clear that the Debtors could fund a Chapter 13 plan under which the Debtors continue to pay their home mortgage and their vehicle lease payments, *and* repay all of the their unsecured debts (which total $43,099.97) in full, in only 41 months, which is far less time than the maximum 60 months that a Chapter 13 plan may run.[28]  This is the calculation:

| | |
|---|---|
| Monthly surplus ($1,252.32) x 41 | $ 51,345.12 |
| less Chapter 13 Trustee Fee (7.5%) | - $ 3,850.88 |
| Subtotal | $ 47,494.24 |
| less attorney fee (if case converts) | - $ 3,500.00 |
| Amount available to pay unsecured creditors | $ 43,994.24 |

---

[25]  Schedule J (Docket # 1) shows a $900.00 per month mortgage payment, on Line 4, and Schedule D (Docket # 1) and Line 5 of Schedule J together show that the Debtors have only one mortgage on their home.  Schedule J shows the two vehicle lease payments, on Lines 17a and 17b, of $391.55 and $239.00 per month.

[26]  *See* Schedule G (Docket # 1).

[27]  *See* Lease Assumption Agreements, filed November 15, 2019 (Docket ## 28, 29) (each listing the monthly lease payments and stating that the lease payments "are not in default").

[28]  *See* 11 U.S.C. § 1322(d).

In considering the totality of the circumstances of the Debtors' financial situation, the Court finds it significant that the Debtors' sources of future income (social security and private pension/retirement income) are stable and, as the above computation shows, the Debtors clearly have the ability to fund a Chapter 13 that pays all of their unsecured debts in only 41 months. And the Debtors, who have no dependents,[29] can do this even while continuing to drive their two nearly-new and rather expensive leased vehicles. These factors "strongly suggest that [the Debtors] can readily repay a substantial dividend to their creditors and that [they] do not need Chapter 7 relief." *See Modiri*, 474 B.R. at 514. The Debtors have not asserted any other circumstances that militate against a finding of abuse. Nor is a finding of abuse negated by any of the other *Krohn* factors noted in Part IV.A above.

The Court finds that granting the Debtors in this case a discharge under Chapter 7 would be an abuse of Chapter 7. So under §§ 707(b)(1) and 707(b)(3), this case must be dismissed, or, if the Debtors so choose, converted to Chapter 13.

## V. Conclusion

For the reasons stated in this Opinion, the Court will enter an order granting the UST's Motion. The Order will allow the Debtors 14 days to file a motion to convert this case to Chapter 13, and provide that if no such motion is timely filed, the Court will dismiss this case.

**Signed on January 27, 2020**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**

---

[29] *See* Schedule J (Docket # 1), Line 2.

32